ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TRIPLE-S SALUD, INC.<br><br>Apelado<br><br>v.<br><br>JORGE GARCÍA FERRERAS Y OTROS POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR JANE DOE Y OTROS<br><br>Apelantes | TA2026AP00365 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020CV02180<br><br>Sala: 403<br><br>Sobre: Cobro de Dinero - Ordinario |

Panel integrado por su presidente, el Juez Cruz Hiraldo, la Jueza Boria Vizcarrondo[1] y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Compareció ante nos el Sr. Jorge García Ferrara (en adelante, "parte demandada" o "parte apelante") mediante el recurso de epígrafe presentado el 10 de abril de 2026. Nos solicitó la revisión de la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "foro de instancia"). En la aludida determinación, el foro de instancia declaró Ha Lugar la *Demanda* y ordenó a la parte demandada a pagar las sumas siguientes: (i) $354,684.99 por concepto de sobrepago, (ii) las costas incurridas en el litigio, (iii) $20,000.00 por concepto de honorarios de abogados y (iv) $5,624.00 por gastos y honorarios incurridos en la preparación de la Solicitud de sanciones presentada por Triple-S. Además, desestimó con perjuicio la *Reconvención* presentada por la parte demandada como consecuencia de la anotación de su rebeldía y la eliminación de sus alegaciones.

---

[1] Mediante Orden Administrativa OATA-2026-063 emitida el 2 de junio de 2026, se designó a la Hon. Lersy G. Boria Vizcarrondo en sustitución de la Hon. Ivelisse M. Domínguez Irizarry.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia Sumaria* apelada.

**-I-**

Surge del expediente que Triple-S Salud, Inc. (en adelante, "Triple-S") instó una *Demanda*[2] sobre cobro de dinero. Alegó que la parte demandada rindió servicios como proveedor de servicios médicos a suscribientes de su plan de seguro de salud. Explicó que, como resultado de una auditoría, advino en conocimiento de que la parte demandada adeudaba la suma de $364,112.63 por concepto de sobrepago. Asimismo, sostuvo que dicha deuda era líquida, vencida y exigible. Sin embargo, argumentó que, a pesar de haber realizado múltiples gestiones de cobro, estas resultaron infructuosas.

Por su parte, la parte demandada presentó su *Contestación a la demanda*[3], mediante la cual negó la mayoría de las alegaciones. En síntesis, sostuvo que había efectuado los pagos correspondientes, por lo que no existía justificación para el reclamo de Triple-S. Además, alegó que la auditoría en la que se fundamentaba la reclamación era errónea, arbitraria, especulativa y contraria a las obligaciones contractuales pactadas entre las partes. A su vez, instó una *Reconvención* en la que alegó que Triple-S canceló injustamente el contrato de proveedor de servicios de salud. Por ello, solicitó la suma de $750,000.00 por concepto de daños económicos sufridos y $10,000.00 por concepto de honorarios de abogado debido a la temeridad de Triple-S.

Ante esto, Triple-S instó su *Contestación a reconvención*[4] en la que explicó que el fin de la relación contractual fue a causa de los propios actos de la parte demandada, quien generó una

---

[2] SUMAC-TPI, entrada núm. 1.
[3] *Id.*, entrada núm. 9.
[4] *Id.*, entrada núm. 21.

sobrefacturación excesiva por los servicios prestados. Por lo cual, negó haberle causado algún daño económico a la parte demandada, en la medida que le dio múltiples oportunidades para refutar los hallazgos de la auditoría y saldar la deuda pendiente por concepto de la sobrefacturación indebida.

Luego de varias incidencias procesales, el 18 de marzo de 2024, el foro de instancia emitió y notificó una *Orden* en la cual determinó como sigue:

> Ante el reiterado incumplimiento de la parte demandada con el descubrimiento de prueba en el caso se imponen sanciones económicas por $500. Tiene 5 días finales para producir los documentos so pena de anotarle la rebeldía a la parte demandada y eliminar las alegaciones de la reconvención.[5]

Posteriormente, el 16 de julio de 2025, el foro de instancia emitió una *Resolución*[6] mediante la cual anotó la rebeldía de la parte demandada y eliminó sus alegaciones debido a su comportamiento y conducta obstructiva relacionada con el descubrimiento de prueba. Además, concedió a Triple-S el término de treinta (30) días para presentar una moción de sentencia sumaria, a partir de la conclusión del descubrimiento de prueba. Asimismo, el foro de instancia hizo constar el tracto procesal del caso como sigue:

> El caso de autos se radicó en el año 2020. Ha tenido varios cambios de representantes legales de la parte demandada y de la parte demandante. En varias ocasiones a la parte demandada se le ha requerido producir información relacionada con el descubrimiento de prueba y este ha incumplido.
> Desde los inicios del caso, al enviársele un interrogatorio y producción de documentos el 7 de junio de 2021, el demandado contestó el interrogatorio y ante un requerimiento para proveer todo documento en poder de los demandados que estuviese relacionado con el caso este respondió que la información en cuestión estaba en poder de la demandante y que no había podido localizar ninguna otra correspondencia relacionada al caso.
> .     .     .     .     .     .     .     .
> El 4 de abril de 2024, el demandado presentó una Moción informativa en cuanto a la producción de los documentos solicitados por la demandante e informó haber producido el único documento "que se pudo identificar de lo solicitado, a saber, la hoja de progreso de un paciente". El demandado incluyó una declaración jurada para sustentar su reclamo de que no existían documentos adicionales

---

[5] *Id.*, entrada núm. 78.
[6] *Id.*, entrada núm. 121.

sujetos a producción. De la declaración jurada en cuestión surge que, como parte de la destrucción de ciertos documentos relacionados al trámite de su divorcio, el demandado, "sin conocerlo y según [l]e informaron recientemente", advino en conocimiento, "luego de la deposición tomada para este caso", que con la destrucción de esos documentos también se destruyeron los documentos relacionados al presente caso

[...] el demandado no pudo localizar documentos responsivos en el 2021 porque no hizo gestión alguna para buscar los documentos ni procuró tomar medidas razonables y diligentes para proteger los mismos a tenor con la obligación que impone la Regla 23.1(d) de las de Procedimiento Civil [...] La deposición del demandado se llevó a cabo entre los días 24 de octubre de 2023 y 20 de septiembre de 2024. Por lo tanto[,] la primera gestión realizada para conseguir los documentos requeridos desde el 2021 fue dos (2) años, nueve (9) meses y once (11) días posterior a la solicitud hecha desde el 13 de enero de 2021.

Además, no es hasta el 2 de abril de 2024, que el demandado informó sobre su destrucción. En la declaración jurada del demandado no surgen las circunstancias específicas en las cuales se destruyó la evidencia en cuestión.[7]

En cumplimiento con la *Resolución,* el 11 de agosto de 2025, Triple-S presentó una *Moción de Sentencia Sumaria.*[8]

Aunque el 28 de agosto de 2025 el foro de instancia ordenó a la parte demandada a replicar la moción dispositiva en un término de veinte (20) días, el 4 de septiembre de 2025 dejó sin efecto dicha *Orden* al determinar que había sido emitida por error.[9] Al día siguiente, el foro de instancia añadió lo siguiente:

Dejamos sin efecto la orden tomando en consideración que la parte demandada está en término de recurrir al Tribunal de Apelaciones en cuanto a la Resolución emitida sobre anotar la rebeldía. Una vez transcurra dicho término, evaluaremos la moción de sentencia sumaria.[10]

El 11 de septiembre de 2025, la parte demandada presentó un recurso de *Certiorari* en el que planteó que el foro de instancia erró al anotarles la rebeldía y concluir que no produjo los documentos requeridos en el descubrimiento de prueba, ya que dichos documentos se encontraban en poder de Triple-S.[11] No

---

[7] *Id.*, págs. 4-6.
[8] *Id.*, entrada núm. 124.
[9] *Id.*, entradas núm. 127 y 129.
[10] *Id.*, entrada núm. 132.
[11] SUMAC-TA, recurso TA2025CE00439, entrada núm. 1.

obstante, el 3 de octubre de 2025, el Tribunal de Apelaciones denegó la expedición del referido auto de *Certiorari*.[12]

Expedido el Mandato del Tribunal de Apelaciones[13], el 23 de diciembre de 2025, Triple-S presentó *Moción informativa sobre el estado de los procedimientos*, en la cual hizo constar que había concluido el tramite apelativo y solicitó que se procediera a resolver su moción de sentencia sumaria.

Así las cosas, el foro de instancia emitió el 15 de enero de 2026, notificada al día siguiente, una *Sentencia Sumaria*[14] mediante la cual declaró Ha Lugar la *Demanda* y ordenó a la parte demandada a pagar las sumas siguientes: (i) $354,684.99 por concepto de sobrepago, (ii) las costas incurridas en el litigio, (iii) $20,000.00 por concepto de honorarios de abogados y (iv) $5,624.00 por gastos y honorarios incurridos en la preparación de la Solicitud de sanciones presentada por Triple-S. Además, desestimó con perjuicio la *Reconvención* presentada por la parte demandada como consecuencia de la anotación de rebeldía y la eliminación de sus alegaciones. Asimismo, hizo constar las determinaciones de hechos siguientes:

1. El doctor García rindió servicios como podiatra dentro de la red de proveedores de Triple-S desde el 2002 al 2016.

2. Triple-S realizó una auditoría de la facturación y de los servicios prestados por el doctor García para el periodo entre el 1 de febrero de 2012 y el 31 de agosto de 2013.2 3. La auditoría en cuestión arrojó que al doctor García se le pagó en exceso una cantidad ascendente a $364,112.63.

3. Por consiguiente, el doctor García adeudaba a Triple-S dicha cantidad por concepto de sobrepago.

4. Triple-S gestionó el reembolso o devolución por parte del doctor García de las cantidades que se le pagaron en exceso; sin embargo, las gestiones de cobro de Triple-S han sido infructuosas.

5. Luego de la presentación de la Demanda, Triple-S logró efectuar ciertos recobros adicionales, ascendentes a $9,427.64.

---

[12] *Id.*, entrada núm. 4.
[13] SUMAC-TPI, entrada núm. 135 y 137.
[14] *Id.*, entrada núm. 139.

6. Por consiguiente, actualmente, la cuantía debida por el doctor García asciende a $354,684.99.

7. El doctor García se ha negado a responder por el sobrepago de a [sic] $354,684.99 y, al día de hoy, sigue adeudándole dicha cantidad a Triple-S.[15]

En desacuerdo, la parte demandada presentó *Moción en solicitud de reconsideración a sentencia.*[16] Argumentó que Triple-S no presentó evidencia admisible que apoyara sus alegaciones sobre las cuantías reclamadas. Además, sostuvo que, aunque la anotación de rebeldía conlleva determinadas consecuencias, estas no son absolutas, pues deben salvaguardarse sus derechos al debido proceso de ley. Por tal razón, alegó que permitir la presentación de una moción de sentencia sumaria contra un demandado en rebeldía equivale a violentar su único derecho procesal de contrainterrogar la prueba de la parte demandante. Enfatizó, a su vez, que el foro de instancia emitió *Sentencia Sumaria* sin concederle oportunidad mínima de oponerse.

Por su parte, Triple-S instó su *Oposición a "Moción en solicitud de reconsideración a sentencia".*[17] Señaló que, el foro de instancia no solo dictó *Sentencia Sumaria* dando como ciertas las alegaciones de la *Demanda,* sino que también tuvo ante su consideración una declaración jurada sobre las cuantías reclamadas y la procedencia de su recobro. Además, rechazó el planteamiento de que se hubiera violado el debido proceso de ley de la parte demandada, toda vez que la consideración de la moción de sentencia sumaria permaneció suspendida hasta la culminación del proceso apelativo y, una vez reanudado el trámite, trascurrieron tres (3) meses sin que la parte demandada presentara su posición. Es decir, sostuvo que la parte demandada optó por no presentar su oposición a la sentencia sumaria tras finalizar el proceso apelativo.

---

[15] *Id.*, págs. 5-6.
[16] *Id.*, entrada núm. 142.
[17] *Id.*, entrada núm. 144.

Mediante *Resolución Interlocutoria*, el foro de instancia denegó la solicitud de reconsideración.[18]

Aun inconforme, la parte demandada acudió ante nosotros mediante el recurso de epígrafe[19] y esbozó los señalamientos de error siguientes:

> **PRIMER SEÑALAMIENTO DE ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA PARTE APELANTE NO PRODUJO DOCUMENTOS ALEGADAMENTE REQUERIDOS EN EL DESCUBRIMIENTO DE PRUEBA, A PESAR DE QUE LA PARTE APELADA NO IDENTIFICÓ QUE DOCUMENTOS HACE REFERENCIA.

> **SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ELIMINAR LAS ALEGACIONES Y DECLARAR A LA PARTE APELANTE EN REBELDÍA, COMO CONSECUENCIA DE UNA ALEGADA EXPOLIACIÓN DE EVIDENCIA, SIENDO ESTA LA SANCIÓN MAS ONEROSA, A PESAR DE QUE LOS DOCUMENTOS SE ENCUENTRAN EN PODER DE LA PARTE APELADA DESDE EL 2014.

> **TERCER SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA SUMARIA POR LAS ALEGACIONES, A PESAR DE HABERSE DECLARADO EN REBELDÍA A PARTE APELANTE Y ESTA TENER DERECHO A CONTRAINTERROGAR LA PRUEBA, INCIDIENDO EN EL DEBIDO PROCESO DE LEY QUE LE COBIJA.

> **CUARTO SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA RECONVENCIÓN PRESENTADA POR LA PARTE APELANTE.[20]

De otro lado, Triple-S instó su *Alegato en oposición a "Apelación"*.[21] Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Anotación de Rebeldía**

La anotación de rebeldía tiene como objetivo evitar que se utilice la dilación como estrategia de litigación. *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1069 (2019). Este mecanismo procesal recurre a la coacción contra una parte que, a

---

[18] *Id.*, entrada núm. 145.
[19] SUMAC-TA, entrada núm. 1.
[20] *Id.*, págs. 5-6.
[21] SUMAC-TA, entrada núm. 3.

pesar de que se le dio la oportunidad de refutar una reclamación, opta por no defenderse por pasividad o temeridad. *Ocasio v. Kelly Servs.*, 163 DPR 653, 671 (2005). Con ese propósito, la Regla 45.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1 indica en qué contextos se puede sancionar con la rebeldía:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

El foro adjudicador puede imponer la anotación de rebeldía cuando el demandante o querellado: (1) no comparece luego de haber sido debidamente emplazado; (2) no presenta una moción para defenderse, o (3) no presenta oportunamente su contestación a la demanda o querella. *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 824 (2023); *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 589 (2011). Igualmente, es meritoria la anotación cuando "una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a [e]ste a imponerle la rebeldía como sanción". *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002).

No obstante, "esta facultad de sancionar no puede interpretarse como que se extiende a poder conceder un remedio al cual no se ha demostrado, por la prueba o por las alegaciones, que se tiene derecho". *Rivera v. Insular Wire Products Corp.,* 140 DPR 912, 930 (1996). Asimismo, el adjudicador no puede conceder remedios automáticamente solo porque el caso está en rebeldía.

*Mitsubishi Motor Sales v. Lunor y otros,* supra, pág. 826, citando a *Continental Ins. Co. v. Isleta Marina,* 106 DPR 809, 816-817 (1978); *Álamo v. Supermercado Grande, Inc.,* supra, pág. 102. A tenor con lo anterior, nuestro Máximo Foro ha establecido que para que un tribunal pueda cumplir su función adjudicativa en un juicio en rebeldía, "el proceso de formar consciencia judicial exige la comprobación de cualquier aseveración mediante prueba". *Mitsubishi Motor Sales v. Lunor y otros,* supra, pág. 826, citando a *Continental Ins. Co. v. Isleta Marina,* supra, págs. 816-817; *Álamo v. Supermercado Grande, Inc.,* pág. 101, citando a *Hernández v. Espinosa,* 145 DPR 248, 272 (1998). Para ello, el tribunal deberá celebrar las vistas que entienda necesarias y adecuadas. *Mitsubishi Motor Sales v. Lunor y otros,* supra, pág. 826.

Por tanto, la anotación de rebeldía no exime al tribunal de evaluar si existe o no una causa de acción que amerite la concesión de un remedio. *Álamo v. Supermercado Grande, Inc.,* supra, pág. 102. Igualmente, cabe señalar que, independiente de que se le haya anotado la rebeldía a una parte, esta tiene derecho a conocer de los señalamientos, asistir a la vista, contrainterrogar los testigos de la otra parte, impugnar la cuantía y apelar la sentencia que en su día se emita. *Martínez v. Inst. Cardiopulmonar,* supra, pág. 229; *Continental Ins. Co. v. Isleta Marina,* supra, pág. 817.

La anotación de rebeldía debe ser justa. De lo contrario, se puede constituir un abuso de discreción. *Rivera Figueroa v. Joe's European Shop,* supra, pág. 590. Por esto, "[p]ese a que la rebeldía constituye un mecanismo procesal discrecional, [e]sta no se sostendrá ante el ejercicio burdo o injusto" de su facultad. *Id.* Por ello, nuestro Tribunal Supremo ha dispuesto que la Regla 45 de Procedimiento Civil, *supra,* debe interpretarse de forma liberal, resolviendo cualquier duda a favor de que se deje sin efecto la

anotación o la sentencia en rebeldía. *Rivera Figueroa v. Joe's European Shop*, supra, pág. 592.

Por otro lado, "la tendencia jurisprudencial ha sido la de imponer sanciones económicas, en primera instancia, contra aquella parte que observa una conducta censurable bajo nuestro ordenamiento civil procesal". *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993). Ello, responde a la política judicial imperante que invita a que los casos se ventilen en sus méritos, así como que estos se resuelvan de forma justa, rápida y económica. *Id.* Asimismo, se ha reconocido que los tribunales ostentan un poder inherente para imponer sanciones, el cual les concede una flexibilidad para escoger la medida coercitiva adecuada, así como de ajustar la misma a los hechos, a la causa de acción, y al propósito que se persigue. *Mitsubishi Motor Sales v. Lunor*, supra, pág. 818.

A tales efectos, la Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.2, dispone, en lo pertinente, lo siguiente:

> El tribunal podrá imponer costas interlocutorias a las partes y sanciones económicas en todo caso y en cualquier etapa a una parte o a su representante legal por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. [...]

Así, pues, el foro adjudicador, en el ejercicio de su sana discreción, podrá imponer sanciones económicas en cualquier etapa del pleito "cuando la conducta de las partes vaya en perjuicio de la eficiente administración de la justicia". *Lluch v. España Service Sta.*, 117 DPR 729, 749 (1986). Si es necesaria la imposición de sanciones, en primer lugar, esta debe ser impuesta al abogado de la parte. *Amaro González v. First Fed. Savs*, supra, pág. 1051, citando a *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982). De no ser corregida la situación, entonces procederá la imposición de sanciones más severas, pero solo después de que la parte haya sido debidamente informada de la situación y las consecuencias de

continuar con el incumplimiento. *Amaro González v. First Fed. Savs,* supra, pág. 1051.

Conforme a lo anterior, nuestro ordenamiento jurídico promueve la imposición de sanciones severas solo en casos extremos, donde no exista duda alguna de que la parte haya actuado de manera irresponsable o contumaz, al igual que se observe un claro desinterés y abandono de esta en el caso. *Amaro González v. First Fed. Savs,* supra, págs. 1051-1052, citando a *Arce v. Club Gallístico de San Juan,* 105 DPR 305, 307 (1976).

**B. Sentencia Sumaria**

La Regla 36 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36, instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. 32 LPRA Ap. V, R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una moción fundamentada, mientras que la parte promovida debe mostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Íd.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una

sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón*, 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

En cuanto a los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos materiales para resolver la controversia y surja claramente de que la parte promovida por el recurso no prevalecerá. *Id.*

Conviene destacar que el Tribunal Supremo ha dispuesto que, el foro apelativo se encuentra en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia de una solicitud de sentencia sumaria. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente, de la manera más favorable a favor de la parte promovida, y aplicar las disposiciones de la Regla 36 de Procedimiento Civil, *supra* como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificada en la Regla 36.4 de Procedimiento Civil, *supra;* (3) revisar si en realidad existen

hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos; y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo en su revisión está limitado a lo siguiente:

> *[P]rimero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia.

*Id.,* págs. 114-115.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el presente caso, la parte apelante esbozó cuatro (4) señalamientos de error. Discutiremos en conjunto el primer y segundo señalamiento de error por estar intrínsecamente relacionados. En síntesis, la parte apelante sostiene que el foro de instancia incidió al: (i) anotarle la rebeldía, (ii) eliminarle sus alegaciones y (iii) concluir que no produjo los documentos requeridos en el descubrimiento de prueba, toda vez que dichos documentos se encontraban en poder de Triple-S.

Conforme explicamos en el derecho aplicable, la Regla 45.1 de Procedimiento Civil, *supra,* autoriza la anotación de rebeldía cuando una parte, pese a instrucciones y advertencias, incumple con las órdenes del tribunal o incurre en conducta obstructiva en el descubrimiento de prueba. Asimismo, la jurisprudencia reconoce

que la rebeldía puede imponerse como sanción extrema cuando la conducta de la parte demuestra desinterés, abandono o temeridad, previo agotamiento de sanciones menos severas. *Amaro González v. First Fed. Savs*, supra. Como consecuencia de la anotación de rebeldía, se tendrán por admitidos como cierto todos los hechos bien alegados en la demanda. *Mitsubishi Motor v. Lunor y otros*, supra, pág. 824; *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590. Además, nuestra jurisprudencia reconoce que, una vez anotada la rebeldía, el tribunal puede dictar sentencia como cuestión de derecho cuando las alegaciones justifican el remedio solicitado. *Id.*

Del expediente surge que, desde el 2021, la parte demandada fue requerida en múltiples ocasiones a producir documentos relacionados con la facturación auditada por Triple-S, y que sus respuestas fueron evasivas o insuficientes. Consta que el foro de instancia determinó específicamente que la parte demandada no realizó gestión diligente alguna para localizar dichos documentos, incumplió reiteradamente las órdenes y notificó la alegada destrucción de documentos en abril de 2024, sin explicar de manera adecuada las circunstancias de dicha destrucción. Además, la *Resolución* del 16 de julio de 2025 refleja que el foro de instancia impuso sanciones económicas, otorgó múltiples oportunidades, advirtió en varias ocasiones sobre la posible anotación de rebeldía y explicó detalladamente la conducta obstructiva de la parte demandada, incluyendo la destrucción de documentos sin justificación clara y la falta de diligencia por años.

En cuanto al planteamiento de que los documentos encontraban exclusivamente en poder de Triple-S, señalamos que ese argumento no fue sostenido por evidencia fáctica y que, por el contrario, el récord demuestra que el propio demandado admitió la destrucción inadvertida de documentos relevantes.

A la luz de lo anterior, concluimos que la determinación del foro de instancia descansó en hechos bien fundamentados en el récord procesal y estuvo precedida por advertencias suficientes. En consecuencia, resolvemos que el foro de instancia actuó dentro de los parámetros de su amplia discreción al anotar la rebeldía y que dicha sanción fue proporcional y justificada.

Ahora procedemos a atender de forma conjunta el tercer y cuarto señalamiento de error. En esencia, la parte apelante argumenta que el foro de instancia erró al dictar sentencia sumaria por las alegaciones y desestimar su *Reconvención*, y que al así proceder violó su debido proceso de ley, particularmente su derecho de contrainterrogar la prueba presentada en su contra.

No obstante, antes de atender los señalamientos de error, debemos examinar lo siguiente: (i) si la solicitud de sentencia sumaria interpuesta por Triple-S cumplió con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*; y (ii) si existe una controversia de hechos que impida la resolución sumaria y, de responder en la negativa, revisar *de novo* la aplicación del derecho pertinente a la controversia. Veamos.

Al hacerlo así, concluimos que Triple-S cumplió con los requisitos de forma establecidos por nuestras reglas. Observamos que Triple-S incluyó una relación enumerada de todos los hechos esenciales y pertinentes sobre los que alegaron eran incontrovertidos junto a su evidencia en apoyo. De otro lado, la parte apelante no instó su respectiva oposición a la solicitud de sentencia sumaria, a pesar de que consta en el expediente que tuvo oportunidad para oponerse, mas decidió no hacerlo.

Luego de ejercer nuestra función revisora, advertimos que en el presente litigio no existen controversias de hechos que impidan la resolución sumaria de la controversia, ya que al estar la parte

apelante en rebeldía se dan por cierto todos los hechos bien alegados. Tampoco encontramos que el foro primario haya errado en la aplicación de la norma jurídica pertinente, de manera tal, que nos sea forzoso revocarle. Consideramos que los fundamentos por lo que alcanzamos esta conclusión están muy bien enunciados en el expediente de epígrafe. Repasemos.

Consta que la *Sentencia Sumaria* no se emitió hasta culminado el trámite apelativo iniciado por la propia parte apelante mediante el recurso de *Certiorari* para revisar la *Resolución* del 16 de julio de 2025. Obsérvese que la expedición de dicho recurso fue denegada el 3 de octubre de 2025 por un Panel Hermano. A partir de ese momento, transcurrieron tres (3) meses hasta que, el 16 de enero de 2026, el foro de instancia dictó *Sentencia Sumaria* sin que la parte apelante presentara oposición a la moción de sentencia sumaria. Tal inacción habilitó al foro de instancia a adjudicar.

Debemos recordar que, si bien la rebeldía no elimina derechos fundamentales —incluyendo el derecho a contrainterrogar y a impugnar la cuantía— también es cierto que la parte en rebeldía debe comparecer oportunamente y ejercer tales derechos. Ello no ocurrió en este caso.

Además, al resolver la controversia, el foro de instancia no se limitó a la declaración jurada provista por Triple-S sobre la cuantía del recobro, sino que también consideró las alegaciones de la *Demanda*. Inclusive, el foro de instancia determinó que, al dar por ciertas a las alegaciones de la *Demanda*, contaba con fundamento suficiente para concluir que la parte apelante adeuda las cuantías reclamadas por Triple-S, aun sin considerar los documentos anejados a la solicitud de sentencia sumaria.

En cuanto a la Reconvención, esta fue eliminada como consecuencia directa de la anotación de rebeldía, toda vez que la parte apelante perdió el beneficio de sostener sus alegaciones

afirmativas al incurrir en incumplimientos reiterados y hacer caso omiso a las sanciones impuestas. Por tanto, la desestimación de la reconvención es un resultado procesal inevitable, dado a que la anotación de la rebeldía fue válida, proporcional y correctamente impuesta.

Así pues, concluimos que el foro de instancia no erró al dictar sentencia sumaria por las alegaciones y desestimar la *Reconvención.* No se cometió el tercer ni cuarto señalamiento de error.

**-IV-**

Por los fundamentos antes expuestos, se **confirma** la *Sentencia Sumaria* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones